The STATE of Texas, Appellant,

v.

Robert Henry BROWN, Appellee.

No. 13–95–081–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1996.

Rehearing Overruled Sept. 26, 1996.

Carl Lewis, County Attorney, Corpus Christi, for appellant.

David M. Jordan, Corpus Christi, for appellee.

Before SEERDEN, C.J., and YANEZ, and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

Appellee Robert Brown was arrested in a Sears store rest room and charged with indecent exposure. By pretrial motion, he moved to suppress "evidence and information seized and obtained" through an allegedly illegal search. The trial court granted the motion, and the State appealed. We affirm.

### State's Failure to Comply with Article 44.01(a)(5)

At the outset, we address the State's failure to comply with a portion of the statute governing the State's right to appeal a pretrial order suppressing evidence. *See Tex. Code Crim.Proc.Ann.* art. 44.01(a)(5) (Vernon Supp.1996). This provision provides:

(a) The state is entitled to appeal an order of a court in a criminal case if the order:

(5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and *if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case. Id. (emphasis ours).*

The record does not reflect that the prosecuting attorney certified to the trial court

that the appeal was not taken for the purpose of delay or that the evidence was of substantial importance in the case. The importance of the certification requirement was discussed in *State v. Muller*, 829 S.W.2d 805, 809–10 n. 5 (Tex.Crim.App.1992), but any consequences of noncompliance were not addressed. Although Brown has not complained, we address whether the State's noncompliance with the certification requirement is jurisdictional error because the statute appears to make the certification a condition precedent to appeal.

When our Legislature adopted article 44.01 in 1987, it made clear its intent to afford the State of Texas the same appellate powers afforded the federal government under 18 U.S.C. § 3731. *State v. Moreno*, 807 S.W.2d 327, 332 (Tex.Crim.App.1991). As a result, much of article 44.01, including section (a)(5), is similar to 18 U.S.C. § 3731.

The generally accepted rule of statutory construction is that when the Texas Legislature adopts a "foreign" statute it also adopts the foreign construction of that statute. *Castillo v. State*, 810 S.W.2d 180, 183 (Tex.Crim.App.1990). The federal circuit courts of appeals have held consistently that the government's failure to comply with the certification requirement is not jurisdictional error. *See United States v. Miller*, 952 F.2d 866, 875 (5th Cir.1992); *United States v. Becker*, 929 F.2d 442, 444–45 (9th Cir.1991); *United States v. Eccles*, 850 F.2d 1357, 1359–60 (9th Cir.1988); *In re Kiefaber*, 774 F.2d 969, 972 (9th Cir.1985); *United States v. Salinas–Calderon*, 728 F.2d 1298, 1300 (10th Cir.1984); *United States v. Herman*, 544 F.2d 791, 794 n. 3 (5th Cir.1977); *Meier v. Keller*, 521 F.2d 548, 553 (9th Cir.1975); *United States v. Crumpler*, 507 F.2d 624 (5th Cir.1975); *United States v. Wolk*, 466 F.2d 1143, 1146 (8th Cir.1972); *United States v. Kleve*, 465 F.2d 187, 189–90 (8th Cir.1972); *United States v. Welsch*, 446 F.2d 220, 224 (10th Cir.1971).

Recently though, the 10th Circuit Court of Appeals has held that a court of appeals may exercise its discretion to dismiss an appeal when the certification is not filed timely. *United States v. Carrillo–Bernal*, 58 F.3d 1490, 1491–97 (10th Cir.1995); *United States v. Hanks*, 24 F.3d 1235, 1237–39 (10th Cir.1994). As Brown has not complained about the State's failure to certify as required, and as no court has ever held the omission to be jurisdictional error, we consider any error in the omission waived and will consider the appeal.[1]

In its sole point of error, the State contends that the trial court erred in granting appellee Brown's motion to suppress evidence obtained by a police officer who viewed Brown masturbating in a toilet stall.

### Facts

At the suppression hearing, Brown did not testify. Police officer Greg Shipley testified for the State, and a Sears manager, Jaime Zamora, was called by Brown. The record shows that in early August 1994, security personnel at the Corpus Christi Sears store contacted the city police after receiving complaints from customers regarding homosexual activity in its rest rooms. This activity was generally described as public lewdness and indecent exposure. The only event specifically described at the suppression hearing involved a customer's complaint about someone peering underneath his toilet stall partition.

As part of the police response to the complaints, officer Greg Shipley and his partner, Bill Livingston, frequented the upstairs men's rest room where most of the activity had occurred. The rest room had four stalls and three urinals. All the stalls had doors with locks. The top of each stall was about six feet high, and the bottom of each was about twelve inches from the floor. Cracks of undisclosed width existed along the stall doors. While the stalls had been constructed so that a person in one stall could not view those in neighboring stalls, the partition separating the third and fourth stalls contained a small hole, apparently bored by one or more customers. Sears repeatedly filled the

---

1. While an appellee may not challenge the verity of the State's certification, *see Johnson v. State*, 871 S.W.2d 744, 749 (Tex.Crim.App.1994), an appellee has every right to complain about the State's failure to certify.

hole with putty, but according to the Sears manager, it was "reamed out" soon after each repair. "A lot" of the reported sexual activity had involved stalls three and four.

On August 17, 1994, Shipley and Livingston were in the linen department near the upstairs men's rest room. A man, later identified as appellee Brown, came out of the rest room and slowly passed by Shipley and Livingston. Shipley remarked to Livingston in a "medium to high voice" that he was going to the rest room. Shipley did not know whether the man heard the remark.

Shipley went directly to the fourth stall. About a minute later, the rest room door opened and someone, later identified as Brown, went to the third stall. Shipley looked through the hole into stall three and saw Brown lower his pants and masturbate. Shipley exited his stall and leaned against the wall in front of Brown's stall. From there, he could see through the door crack that Brown was still masturbating. According to Shipley, they made eye contact, and Brown "stood up and nodded to me as if to ask 'what's up.'" Shipley nodded back, and as he took a step toward the stall, Brown opened the door and continued to masturbate. Shipley identified himself as a police officer and told Brown that he was under arrest. Brown said, "Oh shit." That was Brown's only comment.

■ At the suppression hearing, the State produced what was purportedly an accurate model of the fourth stall. Although the stall was marked as a State's exhibit and used at the hearing,[2] it was not introduced as evidence. The record contains no diagram of the stall or its dimensions. It is clear, however, that both sides, as well as the trial judge, treated the stall as evidence.[3] Thus, the exhibit may be considered on appeal as if admitted. See *Cornish v. State*, 848 S.W.2d 144, 145 (Tex.Crim.App.1993); *Heberling v. State*, 834 S.W.2d 350, 356 (Tex.Crim.App. 1992); *Smith v. State*, 859 S.W.2d 463, 465 (Tex.App.—Fort Worth 1993, pet. ref'd); *Reyna v. State*, 846 S.W.2d 498, 503 (Tex.

App.—Corpus Christi 1993, no pet.); *Munoz v. State*, 840 S.W.2d 69, 72 (Tex.App.—Corpus Christi 1992, pet. ref'd). Our inspection shows that the hole bored in the partition separating the two stalls was three-fourths of an inch in diameter, approximately 35 inches from the floor. Neither the testimony nor the exhibit shows the width of the crack by Brown's stall.

## Standard of Review

■ At a suppression hearing, the State has the burden of proving the legality of a warrantless search or seizure. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986). The trial judge is the sole trier of fact and may choose to believe or disbelieve any or all of the witnesses' testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); *State v. Mireles*, 904 S.W.2d 885, 887 (Tex.App.—Corpus Christi 1995, pet. ref'd). An appellate court, when reviewing a ruling on a motion to suppress, views the evidence in the light most favorable to the trial court's ruling. *Mireles*, 904 S.W.2d at 887. Because the trial court granted Brown's motion to suppress, we view the evidence in Brown's favor. If we determine that the trial court was correct on any theory raised in the trial court, we will uphold the trial court's order. *State v. Brady*, 763 S.W.2d 38, 40 (Tex. App.—Corpus Christi 1988, no pet.).

## Expectation of Privacy in Toilet Stall

Texas has long recognized that a citizen may have a privacy interest in a public toilet stall or comparable place. *See Buchanan v. State*, 471 S.W.2d 401, 403–04 (Tex.Crim.App. 1971) (toilet stall); *Liebman v. State*, 652 S.W.2d 942, 944–48 (Tex.Crim.App.1983) (booth in adult theater).

Defendant Buchanan, for example, was found to have an expectation of privacy in a toilet stall with a closed door but no expectation of privacy in a stall with no door. *Buchanan*, 471 S.W.2d at 404. Defendant Liebman was found to have a privacy interest in a

---

2. The trial judge looked through the hole.

3. The exhibit was disassembled after the suppression hearing. What remains of the exhibit, a

partition, was obtained from the Nueces County Attorney's office.

booth that was designed for privacy. *Liebman*, 652 S.W.2d at 946.

These cases rest on the principle that what a person seeks to preserve as private in an area accessible to the public may be constitutionally protected. *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

■ To determine whether Brown had a privacy right in his public toilet stall, we make a two-prong inquiry. *See Liebman*, 652 S.W.2d at 945–46. The first inquiry is whether Brown exhibited an actual or subjective expectation of privacy. *Id.* The second inquiry is whether society is prepared to recognize as reasonable Brown's subjective expectation, if any.

### Brown's Subjective Expectation

■ Whether a person has a reasonable expectation of privacy in a public toilet stall depends, in large part, on the design of the stall and the conduct of the individual or individuals within the stall. *Liebman*, 652 S.W.2d at 945–46. In determining whether Brown had a subjective expectation of privacy, we look at the design of the stall and Brown's conduct. The design is material because it reflects the inherent opportunity which Brown had for privacy. *Id.* Brown's conduct is material because it reflects whether he availed himself of an opportunity for privacy. *See id.* For example, in *Green v. State*, 566 S.W.2d 578, 583 (Tex.Crim.App. 1978), the defendant was found to have no subjective expectation of privacy in a peep show stall because there was a three to five-inch gap between the curtain and the edge of the stall.

■ In the present case, the Sears stall was equipped with a door and a lock. The partitions were six feet high. Brown shut the door when he entered the stall. While someone had altered the original design of the stall by boring a three-quarters inch hole

through one side of the stall, there is no evidence that Brown had created or was even aware of the small hole.[4] There is no evidence that Brown, once in the stall, attempted to contact Shipley, either by words or gestures, before Shipley peeked through the hole or crack.[5]

Objectively speaking, Brown possessed the same amount of privacy that an "innocent user" would have had in stall three. Further, Brown took no overt means to direct attention to himself or to expose himself beyond that of any "innocent user" until Shipley peeked through the crack and, in effect, contacted Brown. We further note that Brown engaged in no conduct before entering the rest room from which Shipley could have determined that Brown was inviting anyone to watch his rest room activity. While the evidence ultimately shows that Brown returned to the rest room from which he came—a circumstance which might arouse suspicion—there is no evidence that Shipley, prior to peering through the hole, knew that the person in the third stall was the same person who had just come out of the rest room. Thus, before looking through the hole, Shipley could not have known who was sitting next to him.

The State argues that Brown's conduct of going to the third stall instead of the other two vacant stalls and his opening of the door while masturbating shows that he did not intend to maintain his privacy in the third stall. This argument is tempting but unpersuasive. Although we agree with the State that Brown's intent can be inferred from his acts, we do not find that the trial court was required to find, as a matter of fact or law, that Brown intended to forego his privacy either before or contemporaneously with Shipley's peering. Without evidence that Brown was aware of the hole, the trial court could have found that Brown's conduct of going to the third stall and remaining silent demonstrated an intent to remain private.

4. In *State v. Holt*, 291 Or. 343, 630 P.2d 854, 858 (1981), the defendant peered through holes, thereby demonstrating that he knew his conduct was not private. The Court stated, "To be protected by exclusion, privacy must be something more than a hope that a person to whom one exposes oneself is not a police officer." *Id.*

5. Audible sounds of masturbation have been held to defeat any expectation of privacy. *Swann v. State*, 637 P.2d 888, 890 (Okla.Crim.App.1981).

Brown's opening of the door, after becoming aware that Shipley was peering at him, does not mean that Brown had no expectation of privacy before or at the time Shipley peered through the partition hole or the door crack. The trial court, as fact-finder, was able to consider Brown's opening of the door as a factor in determining his intent, but the trial court was also able to consider, as factors, that Brown said nothing and did nothing to attract Shipley's attention to the partition hole or door crack. Thus, there is some evidence that supports the trial court's implicit finding that Brown expected privacy.

The State also argues that Brown had no expectation of privacy, apparently as a matter of law, because he was viewable through the hole in the stall and the crack by the door. Other courts have addressed similar situations. *See Search and Seizure: Reasonable Expectation of Privacy in Public Rest Room*, 74 A.L.R.4th 508 (1989); Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, Ch. 2, § 2.4(c) (West 1996). Similar cases turn on whether the officer had to peek into the stall or whether the officer could see enough through the opening without having to peek. *See Ward v. State*, 636 So.2d 68, 71 (Fla.App.— 5th Dist.1994); *State v. Limberhand*, 117 Idaho 456, 788 P.2d 857 (App.1990); *City of Tukwila v. Nalder*, 53 Wash.App. 746, 770 P.2d 670 (1989).

In the present case, the trial judge was present in the courtroom and looked through the small hole. The trial judge could have disbelieved Officer Shipley's testimony that he did not have to peek through the small hole to view Brown. Stated in terms of our appellate review standard, we cannot find that the trial judge abused his discretion by implicitly finding that Shipley had to peek through the hole to see Brown.[6] The trial judge, likewise, was able to inspect the model toilet stall and could have determined that the door cracks were not sufficiently wide enough to conclude that Brown was in "plain view."

One Texas case, not involving a rest room, must be addressed. In *George v. State*, 509 S.W.2d 347, 348 (Tex.Crim.App.1974), an officer, standing about a foot from a fence surrounding the defendant's property, looked through cracks and knotholes in the fence and observed marihuana plants growing. The Court upheld the officer's conduct in looking through the cracks and knotholes. We note, however, that the analysis and facts in the Court's opinion are brief, and it is unclear whether the area in question was protected by the Fourth Amendment. Further, in that case, the officer had facts before he peered through the fence that the defendant was engaging in criminal activity. Officer Shipley's peering was not based on any reasonable belief that someone in the next stall was committing an offense.

In any event, we find that the trial court did not err by implicitly finding that the State failed to meet its burden to show that Brown had no subjective expectation of privacy in his closed toilet stall.

### Was Brown's Subjective Expectation Justifiable

The second question in determining whether a "search" occurred requires an inquiry into whether Brown's subjective expectations of privacy were such that society is prepared to recognize them as "reasonable." *Liebman*, 652 S.W.2d at 946. In Texas, *Buchanan* is controlling. Society is willing to recognize the privacy expectation of a person in a closed rest room stall. *Buchanan*, 471 S.W.2d at 403–04.

Because the State does not argue that Officer Shipley had probable cause or reasonable suspicion to support his search of Brown's stall, and as we find that Brown did have a subjective expectation of privacy which society is willing to recognize, we find that Officer Shipley's conduct was improper and that evidence obtained by his conduct must be suppressed. The trial court did not err. The State's sole point of error is overruled.

---

**6.** The record does not reveal what the trial judge viewed through the hole. It would have been good practice for the record to reflect what oc-

curred in the trial court. *See Rodriguez v. State*, 645 S.W.2d 273, 273 (Tex.Crim.App.1982).

## Exclusionary Rule

During oral argument but not in its brief, the State argued that even if the initial intrusion was improper, the trial court's order granting Brown's motion was overbroad to the extent that only Shipley's observation's before Brown opened the door needed to be suppressed. This argument raises significant issues about the scope of the exclusionary rule. As the State has not briefed this basis for finding the trial court's order invalid, we will not address it.

The order of the trial court suppressing the complained-of evidence is affirmed.

SEERDEN, C.J., dissents.

SEERDEN, Chief Justice, dissenting.

I respectfully dissent. I would hold that the testimony of officer Shipley was the result of his lawful observations and not the result of a search. I would also hold that the subjective intent of appellee as to his reasonable expectation of privacy in the bathroom stall is a question of fact to be resolved at trial and not a question of law to be resolved at a suppression hearing.

Every observation made by a law enforcement officer is not a search. A case analogous to the present situation presented itself in *Green v. State,* 566 S.W.2d 578 (Tex.Crim. App.1978). In this sodomy case, appellant was in a business establishment known as Mr. Peepers. The first section of this business was a typical newsstand. The second section contained pornographic materials and the third section, the rear portion of the building, consisted of nineteen booths with coin operated viewers which showed sexually explicit materials. The lighting in this area was dim. Each booth was approximately six and one-half feet tall and entry was gained through a full length non-transparent curtain. Law enforcement officers in the area of the booths looked through the gap in the non-transparent curtain and observed appellant engaged in an act of sodomy.

In reply to Green's argument that the officers' observations violated his right to privacy, the court stated, "[the officers] had a legal right to be in the hallway outside the booth. A three to five inch gap between the curtain and the edge of the booth enabled the officers to view appellant's conduct. We hold that the officers' conduct did not constitute a search." *Id.* at 583.

In our case, while the size of the gap in the door to the toilet booth is not described, it was wide enough not only for the officer to view the appellant from the hallway, but also for appellant to view the officer. The restroom was open to the male public and the officer had a right to be where he was when he viewed appellant.

Likewise, while in the adjoining stall, the officer was where he had a right to be. The location of the hole in the partition between the stalls was such that a person making the customary use of this facility could see through the hole without taking any extraordinary measures. The officers had not made the hole between the stalls and the ability to see through the partition was equal to both the officer and the appellee.

The cases cited in support of the majority opinion are distinguishable on their facts. In *Buchanan v. State,* 471 S.W.2d 401 (Tex. Crim.App.1971), the officers observed the defendant from a concealed position above the toilet stall. In *Liebman v. State,* 652 S.W.2d 942 (Tex.Crim.App.1983), one of the officers had to boost the other above a seven foot wall before he could view the illicit act. In our case, it required no unusual act or exertion for the officer to observe the appellee. In fact, when the officer viewed the appellee through the opening in the door, he was seen by appellee, who voluntarily opened the door.

Finally, it should be noted that the Fourth Amendment and Art. I, Sec. 9, of the U.S. and Texas Constitutions, respectively, protect people not places. *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); *Green,* 566 S.W.2d at 582. Appellant is charged with unlawfully and with intent to arouse and gratify his sexual desires, exposing part of his genitals to the officer by recklessly disregarding whether another was present who would be offended by his exposing and rubbing his penis up and down. The majority opinion bases its conclusions solely on its view of the place where the conduct occurred. The only

evidence of appellee's intent is the action he took. His actions show no evidence of an expectation of privacy on his part. To the extent that they may raise a fact issue, it is part of the burden of proof during the trial, not a subject for granting a motion to suppress the evidence.

Accordingly, I would reverse the judgment of the trial court and remand the case for trial.