

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00247-CR
_____

THE STATE OF TEXAS, Appellant

V.

RICHARD OPARE, Appellee

---

On Appeal from County Criminal Court No. 3
Tarrant County, Texas
Trial Court No. 1470887

---

Before Sudderth, C.J.; Meier and Kerr, JJ.
Opinion on Rehearing by Chief Justice Sudderth

## OPINION ON REHEARING

### I. Introduction

The State filed a motion for rehearing in which it complains that we reached the wrong result, referring us to *State v. Prieto*, PD-1115-14, 2014 WL 6478236, at *1 (Tex. Crim. App. Nov. 19, 2014) (not designated for publication),[1] an unpublished court of criminal appeals opinion that they cited in footnote 3 on page 13 of their opening brief. Because we are not bound by an unpublished—nonprecedential—opinion, and based on the reasoning set out below, we affirm the trial court's order granting Appellee Richard Opare's motion to suppress.

### II. Background

Around 2:30 a.m. on September 15, 2015, Christine Hubbell, who was a Pantego police officer at the time, conducted a traffic stop of Opare and arrested him for driving while intoxicated. Three years later, Opare filed a motion to suppress, arguing that the stop had been illegal because there was insufficient reasonable suspicion or probable cause to support it. During the interim, Hubbell moved out of state.

---

[1]Because we discuss both the underlying El Paso opinion that was reversed by the court of criminal appeals's unpublished opinion, *see State v. Prieto*, No. 08-12-00268-CR, 2014 WL 2447711 (Tex. App.—El Paso May 30, 2014) (not designated for publication), *judm't vacated*, 2014 WL 6478236, at *1, and the higher court's opinion, we will refer to the El Paso opinion as *Prieto I* and the court of criminal appeals's opinion as *Prieto II*.

2

At the April 13, 2018 suppression hearing, Sergeant Ben Moore, who had been called out to the stop on September 15,[2] testified that by the time he had arrived at the scene, the stop had already occurred. Because he had no independent knowledge of Opare's driving behavior prior to the stop, Sergeant Moore conceded that he was not able to answer questions about what Hubbell's intentions had been in stopping Opare or how she might have perceived in realtime the events on the dashcam video recorded by her patrol car.

The prosecutor then explained to the trial court that Sergeant Moore was at the hearing to authenticate the dashcam video, to which the trial court replied, "[H]ow can he authenticate the video . . . when he wasn't there?" At that point, the prosecutor suggested moving for a continuance[3] and running the suppression motion concurrent with the trial, but the trial court—without admitting the video into evidence—responded, "[L]et's go ahead and just watch the video," and then "sort of informally decide here what to do."

---

[2]Sergeant Moore was no longer with the Pantego Police Department; at the time of the hearing, he worked for the Erath County Sheriff's Office.

[3]The record does not reflect that the trial court ruled on the State's oral suggestion of a continuance or that either party filed a motion for continuance after the hearing. *Cf.* Tex. Code Crim. Proc. Ann. art. 29.02 (West 2006) ("A criminal action may be continued by consent of the parties thereto, in open court, at any time on a showing of good cause, but a continuance may be only for as long as is necessary.").

After viewing the video, the trial court concluded that it would be necessary for Hubbell, as the arresting officer, to authenticate it. The State agreed, adding that the State was willing to subpoena and pay for Hubbell's travel so that she could testify if trial were set. No exhibits were admitted into evidence at the hearing, but the trial court offered to receive briefing and then issue an "advisory" ruling, i.e., "come to a legal conclusion of what might happen at trial if [the State] had the officer here and proved the video up."

Three weeks later, the trial court issued a letter ruling in which, after noting that there was "insufficient evidence present to justify that reasonable suspicion existed for the stop," it granted Opare's motion "in all respects."

## III. Discussion

In a single issue, the State appeals the trial court's order,[4] arguing that the stop was justified because the video showed that Opare committed an offense—failing to signal a lane change—in Hubbell's presence. And on rehearing, the State argues that this court erred by not considering the dashcam video (or Hubbell's offense report) "simply because they were not formally admitted as evidence."[5]

---

[4]The State may appeal an order in a criminal case granting a motion to suppress evidence. Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West 2018).

[5]The State also argues that we erred by concluding that the dashcam video was not included as part of the appellate record. We have corrected the opinion on rehearing to reflect this.

## A.  Standard of Review

We review a suppression ruling by giving almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor and view the evidence in the light most favorable to the ruling, while reviewing the remaining law-to-fact questions de novo.  *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

## B. Our Original Conclusion

The record here contains no evidence for our review.  Because no evidence was admitted to support that Hubbell had reasonable suspicion based on specific, articulable facts to conduct a lawful temporary detention, *see Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010), the trial court did not err by granting Opare's motion to suppress.

## C. On Rehearing

### 1.  Evolution of the Law on the Use of Exhibits Not Formally Admitted into Evidence

When parties treat an exhibit, document, or other material as if those items had been admitted into evidence, even though they were never formally offered or admitted in the trial court, they can properly be considered as part of the evidence on the theory that, in the absence of a timely objection, displaying the evidence before

the jury and eliciting testimony about it is tantamount to introducing it into evidence. *Amador*, 221 S.W.3d at 673–74 (discussing *Harden v. State*, 417 S.W.2d 170, 174 (Tex. Crim. App. 1967) (op. on reh'g)). That is, documents or items in some way made part of the trial record "'[that] are *treated by the court and parties* as if formally introduced into evidence are properly considered by the judge and jury on the merits of the case.'" *Id.* at 674 & n.30 (emphasis added) (quoting 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice & Procedure § 43.349 at 606 (2nd ed. 2001), and citing *Cornish v. State*, 848 S.W.2d 144, 145 (Tex. Crim. App. 1993), *Heberling v. State*, 834 S.W.2d 350, 356 (Tex. Crim. App. 1992), *Smith v. State*, 859 S.W.2d 463, 465 (Tex. App.—Fort Worth 1993, pet. ref'd), and *State v. Brown*, 929 S.W.2d 588, 591 (Tex. App.—Corpus Christi 1996), *abrogated on other grounds by State v. Riewe*, 13 S.W.3d 408 (Tex. Crim. App. 2000)). We will review each of the cases relied upon by the court in *Amador*.

### a. *Harden v. State*

*Harden* was an arson case tried before a jury in which the appellant was found guilty of burning down a trailer house. 417 S.W.2d at 171–72. On rehearing, he complained that the evidence did not show that the trailer house in question was mounted on blocks and leveled or that it was enclosed with walls and covered, pointing out that the testimony of the witness about the blocks and leveling was given outside the jury's presence. *Id.* at 174. The court acknowledged that while that particular testimony was not heard by the jury, the jury was present when the witness

identified State's Exhibit No. 1 as a photograph of the burned-out trailer house and testified about it. *Id.* While the photograph was not formally offered and introduced into evidence, "[i]n [the] absence of a timely objection, the display of the photograph before the jury and the elicitation of testimony concerning its features was tantamount to the introduction of the photograph[,] and it could be properly considered as part of the evidence."[6] *Id.* (citing *Erwin v. State*, 350 S.W.2d 199 (Tex. Crim. App. 1961) (op. on reh'g)).[7]

### b. *Heberling v. State*

*Heberling* was a jury trial in which the defendant was charged with delivering more than 400 grams of a controlled substance (cocaine), which the State did not introduce into evidence. 834 S.W.2d at 355. However, the officer and police department chemist testified about the cocaine, it was marked as an exhibit and was physically shown to the jury, and "the trial court and the parties treated the cocaine as if it had been introduced into evidence." *Id.*

The court concluded that based on the jury's visual inspection of the cocaine and the witnesses' testimonies about it, the jury could have reasonably inferred that

---

[6]The opinion on rehearing drew a dissent that complained about the court's having considered "the picture which has never been filed or introduced in evidence in the trial court." *Harden*, 417 S.W.2d at 175 (Morrison, J., dissenting).

[7]In *Erwin*, a jury trial, the court stated, "Testimony read into the record without objection is tantamount to the introduction of the documents from which the testimony was taken." 350 S.W.2d at 326.

the cocaine had been "introduced by the State in evidence" as set forth in the charge.[8] *Id.* at 355–56.

### c. *Cornish v. State*

*Cornish* was a *Batson* challenge case in which the court stated that it was apparent from the record that the parties and the trial court had regarded the juror information cards, which were not admitted into the record, as a significant part of the evidence upon which a resolution of the *Batson* claim would depend. 848 S.W.2d at 145. In a step away from the "jury-saw-it" basis set out above, the court stated, "We have held that evidence which, although not formally introduced is nevertheless treated by the trial court and the parties as if it had been, may be considered on appeal as if admitted." *Id.* (citing *Heberling*, 834 S.W.2d at 356). Accordingly, the court held that the juror information cards, which the trial judge had said would "speak for themselves," could be considered to evaluate the *Batson* claim. *Id.* at 144–45.

---

[8]In *Heberling*, the court held that the mere fact that the State did not technically introduce the exhibit was not dispositive of the court's determination that there was sufficient evidence to support the conviction as set forth in the jury charge. 834 S.W.2d at 356. The argument on appeal in *Heberling* was "predicated on insufficient evidence arising from a jury charge that enlarges on the State's burden of proof." *Id.* at 353 (relying on *Arceneaux v. State*, 803 S.W.2d 267 (Tex. Crim. App. 1990), for the sufficiency standard). However, *Arceneaux*, upon which *Heberling* was based, was subsequently overruled by *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997), which set out the current sufficiency standard of measuring sufficiency not by the jury charge actually given but by the elements of the offense as defined by a hypothetically correct jury charge. *See generally Malik*, 953 S.W.2d at 240 ("[T]he standard we formulate today ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted.").

### d. *Smith v. State*

*Smith* was a DWI jury trial in which the trial court erred by disqualifying one of the potential jurors during voir dire, essentially granting the State an additional strike. 859 S.W.2d at 464. The State argued that because the jury and strike lists were not admitted into evidence by the trial court, they were not properly before this court despite this court's having granted the appellant's motion to supplement the record. *Id.* We cited *Cornish* and *Heberling* to support our decision to consider those documents because the record reflected that the trial court had reviewed both strike lists and the defendant's request for an additional strike, denied by the trial court, was on the record. *Id.* at 465 (citing *Heberling* for the proposition that evidence that is not formally admitted may be considered on appeal if the court or parties treat it as if admitted and concluding that the court and parties had "treated these documents as if admitted").

### e. *State v. Brown*

*Brown* was an indecent exposure case in which the appellant filed a motion to suppress that the trial court granted. 929 S.W.2d at 589. At the suppression hearing, the State produced "what was purportedly an accurate model of the fourth [bathroom] stall," which was marked as an exhibit and used at the hearing but not introduced into evidence. *Id.* at 591. The record contained no diagram of the stall or its dimensions but "[i]t is clear, however, that both sides, as well as the trial judge, treated the stall as evidence." *Id.* Accordingly, the court treated the exhibit as if it had

9

been admitted. *Id.* The court relied not only on *Cornish* and *Heberling* but also on two of its own cases to support this reasoning. *Id.* (citing *Cornish, Heberling, Smith, Reyna v. State*, 846 S.W.2d 498, 503 n.1 (Tex. App.—Corpus Christi 1993, no pet.),[9] and *Munoz v. State*, 840 S.W.2d 69, 72 (Tex. App.—Corpus Christi 1992, pet. ref'd),[10] for the proposition that an exhibit treated by both sides and the trial court as evidence may be considered on appeal as if admitted).

### f. *Amador v. State*

In *Amador*, a DWI case in which the appellant filed a motion to suppress, the trial court heard testimony from the arresting officer and viewed portions of the arresting officer's dashcam video at the suppression hearing but did not formally admit the video into evidence. 221 S.W.3d at 668–69. After the trial court denied the motion, the appellant pleaded guilty and then appealed the denial of his motion to suppress. *Id.* at 668.

The court of appeals affirmed the trial court's ruling at least in part based on the appellant's failure to present a complete record on appeal because he had

---

[9]In *Reyna*, the court stated that although the appellant's counsel never introduced the entirety of some former jurors' affidavits into evidence, he read portions of them at the hearing, the trial court said that it would consider them, and the State did not object. 846 S.W.2d at 501 n.1, 503. Accordingly, the court concluded that the parties and trial court had considered the affidavits as evidence. *Id.* at 501 n.1 (citing *Heberling*, 834 S.W.2d at 355–56 n.6).

[10]In *Munoz*, the court took another step away from the "jury-saw-it" basis, holding that "[e]vidence [that] the parties treat as admitted is *deemed* admitted." 840 S.W.2d at 72–73 (emphasis added) (citing *Heberling*, 834 S.W.2d at 355).

successfully objected to the supplementation of the record with the videotape; the court of appeals assumed that the video would support the trial court's inference of reasonable suspicion. *Id.* at 668, 672. The appellant had objected to the supplementation of the record with the videotape because it had never been marked as an exhibit or been formally introduced into evidence in the trial court. *Id.* at 671.

The appellant then filed a petition for discretionary review, which the court granted to consider whether the court of appeals had erred by assuming that the missing videotape supported the trial court's ruling. *Id.* at 668.

> The court identified the quandary before the intermediate court as follows:

> [T]he trial judge obviously viewed portions of the videotape and appellant relied upon some portions of the tape in the trial court, but appellant objected to supplementation of the record because the trial court may not have viewed the entire tape. It would be improper to ignore evidence that the trial judge did consider, but it would be equally improper to consider evidence that the trial judge did not consider.

*Id.* at 676. In addressing this dilemma, the court noted that "[s]ometimes the parties may treat" an item as if it had been admitted into evidence even though it was never formally offered or admitted. *Id.* at 673. The court reviewed *Harden*, in which the photograph was shown to the jury but not offered or admitted into evidence, and considered commentary on the state of the law after *Harden*, which was that items "in some way made part of the trial record [that] are treated by the court and [the] parties as if formally introduced into evidence are properly considered by the judge and [the] jury on the merits of the case" and thus "properly included in the appellate record and

11

considered by the appellate court." *Id.* at 673–74 (quoting 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice & Procedure § 43.349 at 606 (2nd ed. 2001)).

The court then stated, however, that "if the court reporter's record is unclear and the parties cannot agree as to whether and to what extent they, the trial court, or the jury saw or used an item that was not formally introduced into evidence, 'the trial court must[—]after notice and a hearing[—]settle the dispute." *Id.* at 674 (quoting Tex. R. App. P. 34.6(e)(2)). The court ultimately vacated the intermediate court's judgment and remanded the case to the trial court to resolve the parties' dispute about what portions of the videotape the trial court had reviewed and had used in making its ruling. *Id.* at 669, 677–78.

## 2. *Prieto I* and *Prieto II*

In *Prieto I*, the El Paso court noted that at the initial suppression hearing, the State called the arresting officer and played the video that he had recorded during the traffic stop, and both sides relied on the video during their examination of the officer. 2014 WL 2447711, at *1. The trial court granted the suppression motion and entered findings of fact and conclusions of law, finding, among other things, that the officer's testimony lacked credibility. *Id.*

Three weeks later, at a subsequent hearing, the State formally offered the video into evidence; Prieto objected that it had not been offered or admitted into evidence at the initial suppression hearing and that it was not clear whether it was the same

12

video. *Id.* The trial court sustained Prieto's objections. *Id.* On appeal of the trial court's order granting the motion to suppress, the State did not challenge the trial court's ruling on the video's admissibility, and the video was not included in the appellate record. *Id.* at *1, *3. The court distinguished *Amador* by observing (1) that the State had not sought to supplement the appellate record with the video, and (2) that the State had offered no argument that the court could review the ruling without the video, and Prieto had not agreed to an appellate review of stipulated facts. *Id.* at *2 (declining to sua sponte supplement the record "where the video's absence was clearly known to the parties, both of whom elected nevertheless to proceed"). The court also noted that a distinction between Prieto's case and *Cornish*, *Heberling*, and similar cases was that in *Prieto I*, the State had formally offered the video, and the trial court had expressly refused to admit it. *Id.* at *3 & n.2 ("[T]he validity of the trial court's refusal to admit the video for purposes of the suppression hearing is not before us.").

In *Prieto II*, the court of criminal appeals vacated *Prieto I*. 2014 WL 6478236, at *1. The State argued in its petition for discretionary review that the video was in the appellate record and that it had been treated as though it had been admitted at the suppression hearing. *Id.* (referencing *Cornish*). Without additional discussion, the court agreed, stating,

> The parties and the court treated the videotape as admitted at the initial suppression hearing. Additionally, at the second hearing, the State proffered the tape, and the trial court instructed the court reporter to

13

'put it in there as something that's in there that's not been admitted.' The court reporter did so, showing State's Exhibit 1 as the 'DVD (Filed with the Court Reporter) Offered but not Admitted.'

*Id.* The court concluded that the appellate court had a duty to request the DVD from the trial court clerk and that it had erred by refusing to request the DVD sua sponte and to consider the DVD in its analysis. *Id.*

While somewhat similar to the instant case, *Prieto II* is an unpublished opinion. Criminal opinions that are "not designated for publication" have no precedential value. *See* Tex. R. App. P. 47.7(a). Further, the arresting officer had been present at the suppression hearing to sponsor the video and presumably had attempted to authenticate it in some fashion. *See Prieto I*, 2014 WL 2447711, at *1, *3.

### 3. Analysis

The genesis of the law on the use of exhibits not formally admitted into evidence began with jury trials. *See Harden*, 417 S.W.2d at 174; *see also Heberling*, 834 S.W.2d at 355–56. The "jury-saw-it" rule makes sense from a public policy standpoint because if the unobjected-to item or items introduced to the jury, but not formally offered into evidence, were treated by the jury as evidence, it would be a waste of judicial resources—as well as the time of litigants, lawyers, and jurors—to force a retrial on the merits based on a harmless technicality.

The extension of the law from the "jury-saw-it" standard to *Batson* challenges in *Cornish* is similarly of a harmless-error, practical nature: when clearly reflected in the record that the parties and the trial court had treated the unadmitted evidence as

14

admitted, it could be considered on appeal as if admitted. 848 S.W.2d at 145. But the court in *Cornish* acknowledged that the juror information cards in that case would "speak for themselves," quieting any concerns about authentication. *Id.* at 144–45. We relied on *Cornish* with regard to the jury and strike lists in *Smith*, which likewise required no discretion, interpretation, or authentication to determine whether the State had essentially received an additional strike. *Smith*, 859 S.W.2d at 464–65.

From this, we glean that there are two circumstances under which evidence that was not admitted can be treated as if it had been admitted for purposes of appellate review: (1) the record clearly reflects that a jury saw, heard, or felt the unobjected-to item; or (2) the record clearly reflects that the trial court and the parties treated the evidence as admitted, and there is nothing about the evidence itself that requires discretion, interpretation, or authentication, i.e., the evidence "speaks for [itself]." *See Cornish*, 848 S.W.2d at 144–45; *Smith*, 859 S.W.2d at 464–65.

### 4. Application

The first instance—a jury trial—is inapposite here.

The State has acknowledged that the trial court "declined to formally admit the dashcam video into evidence" but refers us to *Prieto II* in an attempt to convince us that we should nonetheless consider it. The State contends on rehearing that "the parties and the trial court in the instant case treated both the video and the offense report as if they had been admitted after the trial court ordered briefing from both

15

parties" and directs us to the trial court's subsequent letter ruling granting Opare's motion as based on facts viewed on the video.

But the record reflects that no one treated the video as admitted in the trial court. To the contrary, Opare objected to the lack of authentication, and the trial judge asked, "[H]ow can [this witness] authenticate the video . . . when he wasn't there?" The State neither complained in its opening brief nor complains on rehearing that the trial court erred by failing to admit the video into evidence at the suppression hearing, and in the trial court, no one complained that the trial court did not rule on the video's admissibility or pressed the trial court for a ruling.

After viewing the video, the trial judge said that they "could sort of come to a legal conclusion of what might happen at trial *if* you had the officer here and proved the video up." [Emphasis added.] After that, the prosecutor indicated that the State was willing to subpoena the arresting officer and to pay for her travel to come in and testify, and the trial judge said, "Right. Well, I think you would have to. Yes?" The prosecutor agreed, "Yes, and we would." But the record does not reflect that the State did this. To the contrary, the parties agreed to accept an advisory ruling from the trial court on how it would rule *if* the arresting officer were available to authenticate the video—a hypothetical.

In its letter ruling, the trial court listed facts from the arresting officer's report and the dashcam video, but it also noted that the arresting officer was not present at the suppression hearing and that the officer who had attended the hearing "did not

16

witness the Defendant's driving behavior[] but brought Officer Hubbell's dash camera video to the hearing." The trial court considered the cases relied upon by the parties, merely noting that there was "considerably more evidence of 'reasonable suspicion' than present here," with regard to the case cited by the State. It then concluded its recitation by stating that after considering the cases, "I am of the opinion that there was insufficient evidence present to justify that reasonable suspicion existed for the stop and am granting the Motion to Suppress. It is therefore ordered, judged, and decreed that the Motion to Suppress filed by Richard Opare is in all respects granted."

The trial court did not elaborate on whether it had reached the conclusion that the evidence was insufficient because Officer Hubbell did not authenticate it or because of the contents of the dashcam video and offense report, and neither party has asked that we abate the case to the trial court for clarification. *Cf. Amador*, 221 S.W.3d at 674 (stating that if the record is unclear and the parties cannot agree to what extent the trial court used an item that was not formally admitted into evidence, the trial court must settle the dispute).

## IV. Conclusion

*Prieto II* is an unpublished, nonbinding opinion, distinguishable on these facts because the unauthenticated and unadmitted dashcam video and offense report were not treated by the trial court and parties as if they had been formally introduced into evidence; accordingly, we deny the State's motion for rehearing and affirm the trial court's order granting Opare's motion to suppress.

17

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Publish

Delivered: December 27, 2018