**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Geramie GIBSON, Defendant–Appellant.**

No. 96–6437.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1997.

Decided Feb. 10, 1998.

Timothy R. DiScenza (briefed), Thomas L. Parker (argued), Office of the U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Arthur E. Quinn (argued and briefed), Bogatin, Lawson & Chiapella, Memphis, TN, for Defendant–Appellant.

Before: MERRITT and BATCHELDER, Circuit Judges; DOWD, District Judge.*

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

**1.** The court found the offense level to be 30. It then added two levels for obstruction of justice

**OPINION**

DOWD, District Judge.

## I. INTRODUCTION

This appeal, following the appellant's guilty plea and sentencing, questions the denial of the appellant's motion to withdraw his guilty plea and the calculation of the sentencing guidelines.

The appellant-defendant, Geramie Gibson (Gibson), was named in 14 counts of a multi-defendant indictment that was returned on April 25, 1995. The defendant entered a negotiated plea of guilty on November 22, 1995 to nine counts of drug trafficking charges, ranging in time from October 3, 1994 to February 8, 1995. The government agreed to dismiss a conspiracy count charging an agreement to possess with intent to distribute cocaine base and four gun related counts.

On June 13, 1996, after Gibson changed lawyers, he moved to withdraw his guilty plea and that motion was denied. The appellant was sentenced to a term of 160 months.[1]

In the taking of the appellant's guilty plea, the following factual basis was offered and agreed to by Gibson:

> MR. COTTEN: Your Honor, had this case gone to trial, the proof would have shown that in the latter part of 1994 Officer Wendell Miller of the Tennessee Highway Patrol Criminal Investigation Division began working undercover in the Union City area posing as a buyer of crack cocaine.
>
> He was introduced to the individuals charged in this indictment by an informant and after they made numerous trips to Union City in late 1994 and early 1995 to buy crack cocaine. All of the purchases that he would make from the individuals charged in the indictment he recorded on audio tape, and [ ] all the substances that he purchased were preserved as evidence.

and two more levels for a weapons possession but granted a three level reduction for acceptance of responsibility, for a net offense level of 31. With a criminal history of IV, the sentencing range was 151 to 188 months.

The proof would have shown that on October 3, 1994, Officer Miller met with Larry Milligan, Jr., and Geramie Gibson and purchased 2.3 grams of cocaine base.

The proof would have shown that on November 3, 1994, he met with Geramie Gibson and purchased 1.2 grams of cocaine base.

The proof would have shown that on November 17, 1994, Officer Miller met with Geramie Gibson and purchased 1.4 grams of cocaine base.

The proof would have further shown that on December 28, 1994, Officer Miller, with the help of Vicki Williams, found Geramie Gibson. He came to town looking for Geramie Gibson, and Vicki Williams helped him to find Mr. Gibson, and he met Mr. Gibson and purchased 3.6 grams of cocaine base.

The proof would have shown that on December 29, 1994, Officer Miller met with Bobby Jones and Vicki Williams and purchased 1.6 grams of cocaine base.

The proof would have shown that on January 9, 1995, the officer met with Geramie Gibson and Bobby Jones and purchased 8.9 grams of cocaine base.

The proof would have also shown that on January 13, 1995, Officer Miller met with Geramie Gibson and Montrail Butcher, who at the time of all these events was a juvenile, and purchased 17.2 grams of cocaine base.

The proof would have shown that on January 17, 1995, Officer Miller met with Geramie Gibson, Bobby Jones and Montrail Butcher and purchased 3.0 grams of cocaine base.

The proof would have shown that on January 19, 1995, Officer Miller met with Bobby Jones and purchased 2.3 grams of cocaine base.

The proof would have shown that on January 26, 1995, the officer met with Geramie Gibson and purchased 2.1 grams of cocaine base.

The proof would have shown that on February 6, 1995, Officer Miller met with Bobby Jones and purchased 2.7 grams of cocaine base.

In February 1995 Officer Miller, as well as Agent Steve Paris of the Bureau of Alcohol, Tobacco and Firearms, struck a deal with Geramie Gibson whereby Mr. Gibson would trade them some cocaine base for a machine gun and a silencer, and on February 8, 1995, Geramie Gibson, Bobby Jones and Montrail Butcher met with the undercover officers for that purpose and gave the undercover officers thirteen grams of cocaine base, and the officers gave them a machine gun and silencer.

At that time Mr. Gibson, Mr. Jones and Montrail Butcher were arrested after a brief chase.

. . . .

THE COURT: Is that correct as to your involvement in this matter, Mr. Gibson?

MR. BROOKS: May I have just a moment, Your Honor.

(Mr. Brooks and Mr. Gibson confer.)

MR. BROOKS: All he is saying is that as far as these counts that don't involve him, he doesn't know about those things.

THE COURT: I understand. As far as the statement made by Mr. Cotten involves you, is that correct?

MR. GIBSON: Yes, m'am.

(Appendix at pp. 123–27).

## II. THE DENIAL OF THE MOTION TO WITHDRAW THE GUILTY PLEA

During the taking of the guilty plea on November 22, 1995, neither the sparse two page written plea agreement nor the court's colloquy with Gibson provided an estimate or prediction as to the anticipated final offense level. While not required, such an estimate or prediction might have headed off the motion to withdraw the guilty plea, as the main complaint advanced by the defendant in support of his motion to withdraw was his surprise at the harshness of guidelines as applied to him.

Criminal Rule 32 allows for the withdrawal of a guilty plea for a "fair and just reason." The teachings of *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir.1988) give guidance as to the factors to be considered in

determining whether a "fair and just reason" has been demonstrated by listing the following five factors:

1. Whether the movant asserted a defense or whether he has consistently maintained his innocence.

2. The length of time between the entry of the plea and the motion to withdraw.

3. Why the grounds for withdrawal were not presented to the court at an earlier time.

4. The circumstances underlying the entry of the plea of guilty, the nature and the background of the defendant and whether he admitted his guilt.

5. Potential prejudice to the government.

Although Gibson's motion to withdraw the guilty plea was arguably inadequate on its face, the district court conducted an evidentiary hearing. Gibson's first lawyer testified that the presentence report called for sentencing enhancements which he had not anticipated. Gibson indicated that because the probable sentence was so severe, he wanted a jury to determine his guilt. However, Gibson's testimony failed to assert a claim of innocence. The district judge who conducted the hearing was not the judge who had taken the guilty plea and did not have the benefit of the transcript of that guilty plea proceeding during which Gibson had agreed with the factual basis which clearly negated the claim of innocence as set forth in the bare-bones motion to withdraw the guilty plea. Given the more than six months between the guilty plea and the motion to withdraw, the absence of a reason for moving earlier to withdraw, the failure of Gibson to assert his innocence, and his familiarity with the justice system, the district court clearly did not err in denying the motion.

■ We note in passing that *United States v. Broce,* 488 U.S. 563, 571, 109 S.Ct. 757, 763, 102 L.Ed.2d 927 (1989) teaches that a strategic miscalculation is not fair and just reason for withdrawing an otherwise valid plea. Moreover, the fact that a defendant's guideline range is higher than expected is not such a just and fair reason. *See United States v. Stephens,* 906 F.2d 251, 253 (6th Cir.1990).

## III. THE SENTENCING ISSUES

The presentence report, which apparently prompted the motion to withdraw the guilty plea, recommended an offense level of 37 and a Criminal History of IV for a sentencing range of 292–365 months. The court conducted an extensive evidentiary hearing on Gibson's objections, several of which were successful. The PSR called for an offense level of 32 based on weight of the cocaine base in excess of 50 grams. A subsequent check of the weight produced a reading of approximately 46 grams and the court found that the weight was less than 50 grams, thus reducing the offense level to 30. Additionally, the court rejected a finding that the offense level should be enhanced by four levels for a leadership role by Gibson. However, over Gibson's objections, the recommendation of two level enhancements for reckless endangerment (U.S.S.G. § 3C1.2) and for possession of a firearm during a drug transaction (U.S.S.G. § 2D1.1(b)(1)) were approved. Gibson was granted a three level reduction for acceptance of responsibility, for a net offense level of 31. Gibson now challenges on appeal the two enhancements.

### A. The Reckless Endangerment Enhancement.

■ As indicated in the factual basis, Gibson fled when the February 8, 1995 arrest was attempted. His subsequent conduct was summarized in the PSR as follows:

> On February 8, 1995, **Gibson,** Jones and a minor named Montrail Butcher delivered approximately 13.0 grams of crack cocaine to the trooper and an undercover Shelby County Drug Task Force officer in exchange for an unregistered RPT Industries .380 caliber fully automatic machine pistol and an unregistered Sonics Silencer. When ATF, Obion County Sheriff's Department and Union City Police Department officers closed in, the three suspects got in their vehicle and fled. During the course of the 40 to 50 mile per hour chase, **Gibson,** drove through a resident's yard. The suspects ultimately exited the vehicle, which continued to roll until it smashed into a mailbox. All three defendants were

apprehended on foot. Three vehicles were damaged during the chase. Union City residents also exited their homes with shotguns leveled at law enforcement officers during the chase. The firearms, which had been thrown out of the window of the vehicle, were recovered the following morning.

(Appendix at p. 46).

■ The court listened to testimony at the August 21, 1996 sentencing hearing from both the trooper who pursued Gibson as well as Gibson. Gibson contended that he did not know that the vehicle that was in pursuit of him was occupied by law enforcement personnel and thought that it was someone seeking to rob him of the proceeds of the drug transaction. The court found the testimony of Gibson lacking in credibility and granted the enhancement. Findings of fact relating to sentencing issues are reviewed under a clearly erroneous standard. *United States v. Nesbitt,* 90 F.3d 164 (6th Cir.1996). Applying that standard, we find no error.

**B. The Enhancement for Possession of a Firearm**

■ Gibson made a number of sales of crack cocaine to Trooper Miller in his undercover capacity. The last sale took place on February 8, 1995 and, at Miller's persistent urgings, Gibson accepted an unloaded RPT Industries .380 automatic pistol and a Sonic Silencer rather than cash as the quid pro quo for the exchange of 13.0 grams of crack cocaine. Section 2D1.1(b)(*l*) of the Sentencing Guidelines provides simply that "if a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

The district court, sensitive to the application of Section 2D1.1(b)(1) under the facts of this case (i.e., where the firearm was the quid pro quo of the sale), found that the weapon was the essence of the February drug transaction and applied *United States v. McGhee,* 882 F.2d 1095 (6th Cir.1989), which held that where a firearm was involved, a two level enhancement was appropriate. (*See* Appendix at pp. 384–85).

The commentary to Section 2D1.1 at #3 provides: "the enhancement for weapon possession reflects the *increased danger of violence* when drug traffickers possess weapons. The adjustment should be applied if the weapon was present unless it is *clearly improbable* that the weapon was *connected* with the offense." (emphasis added).

Our research, and apparently that of counsel, has failed to locate a case applying or rejecting the application of Section 2D1.1(b) to the delivery of an unloaded gun by an undercover police officer to a seller of a controlled substance as the quid pro quo for the transaction.[2]

Section 1B1.7 of the Sentencing Guidelines, dealing with the Significance of Commentary, instructs that the commentary "is to be treated as the legal equivalent of a policy statement."

It seems apparent that the policy underlying the possession of a firearm enhancement is to punish those defendants engaging in drug transactions who present, by the possession of the firearm, an increase in the likelihood of violence at the time of the transaction.

The "clearly improbable" language provides an exception to the possession. The finding which negates the application of the enhancement is lack of a connection with the offense. We turn to the common meaning of the adjective "connected." The word is defined in Webster's Third International Dictionary as "joined or linked together."

It is beyond dispute that the defendant "possessed" the firearm and that the firearm was linked, i.e., "connected," to the offense. Consequently, we affirm the decision of the district court in applying the Section 2D.1.1(b) enhancement.

An alternative argument of sentencing entrapment was also advanced, apparently as a basis for a downward departure. The court rejected that suggestion, holding:

Finally the defendant Gibson requested the court to make a downward departure

2. As a variation of the instant quid pro quo sale, see *United States v. Castillo,* 979 F.2d 8 (1st Cir.1992), where the defendant was assessed two

levels for a firearm that he contemporaneously sold to the undercover ATF officer along with three ounces of cocaine base.

because of duress and coercion. There is no showing in the record that the trooper or anyone else coerced Mr. Gibson to purchase the firearm. There is a showing that there were numerous calls to him making the existence of the weapon known. The trooper was persistent in trying to consummate the sale, that persistent [sic] did not translate into pressure, coercion, or duress. There was nothing that subverted the free will of Mr. Gibson to engage in that transaction and there is no showing that any downward departure is warranted in this case.

(Appendix at p. 389).

We also reject the argument.

## IV. CONCLUSION

As we find no error in the denial of the motion to withdraw the guilty plea or in the calculation of the sentence, Gibson's conviction and sentence are AFFIRMED.