**UNITED STATES of America, Plaintiff,**

v.

**Jose GOMEZ–OROZCO, Defendant.**

**No. 98–30001.**

United States District Court, C.D. Illinois, Springfield Division.

Nov. 12, 1998.

---

Esteban F. Sanchez, Springfield, IL, for plaintiff.

David B. Mote, Springfield, IL, for defendant.

## MEMORANDUM ORDER AND OPINION

RICHARD MILLS, District Judge.

Too little, too late.

Issue: May a Defendant withdraw his guilty plea months after entering it because of the discovery of some rather equivocal evidence that was available earlier?

### BACKGROUND

In 1995 Defendant Jose Orozco–Gomez had been deported from the United States following his conviction of a felony. On January 8, 1998, Defendant was charged by indictment with the offense of reentry of an illegal alien, in violation of 8 U.S.C. § 1326(a). Then, on February 23, 1998, he pled guilty to the charge. The Presentence Report prepared in this case indicated that Defendant's father was a citizen of Mexico.

· Subsequently, after entering the guilty plea but before sentencing, Defendant sought to withdraw his guilty plea, asserting many different grounds for his request. All of them, however, revolved around the discovery that Defendant's father was in fact a United states citizen, rather than a citizen of Mexico as indicated in the Presentence Investigation Report. A hearing on the motion to withdraw the plea was granted. After the hearing, in his motion filed on August 11, 1998, Defendant asserted yet another reason

for allowing defendant to withdraw his plea: that Defendant had discovered his parents may have been married under the common law of Texas, thereby conferring citizenship on Defendant. This latest claim by Defendant came almost six months after his guilty plea was entered. All these various grounds will be addressed in turn.

## ANALYSIS

### 1. Legal Standard

■ Once a guilty plea is entered, no defendant has an absolute right to withdraw that plea. *United States v. LeDonne,* 21 F.3d 1418, 1423 (7th Cir.1994) (citing *United States v. Groll,* 992 F.2d 755, 758 (7th Cir. 1993)). Instead, "[i]f a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed.R.Crim.P. 32(d). "The phrase 'fair and just,' being a loose standard rather than a mechanically applied rule, defies universal content, escapes precise delineation and instead derives content solely from the specific circumstances of each case." *United States v. Trussel,* 961 F.2d 685, 688 (7th Cir.1992). Consistent with this broad view of "fair and just," whether to allow a defendant to withdraw a guilty plea is within the discretion of the district court. *United States v. Saenz,* 969 F.2d 294, 296 (7th Cir.1992) (citing *United States v. Ray,* 828 F.2d 399, 422 (7th Cir.1987), cert. denied 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988)).

Several grounds have been asserted by Defendant in support of his argument: (1) Under 8 U.S.C. § 1401(g), he qualifies as a citizen, despite the specific provisions regarding children born out of wedlock contained in 8 U.S.C. § 1409(c); (2) that the "technical" requirements imposed on children born out of wedlock and claiming citizenship through their fathers, contained in 8 U.S.C. § 1409(c), violates equal protection; (3) that the provisions of 8 U.S.C. § 1409 may not apply to Defendant because some amendments only apply to those who have reached the age of 18 at the time of the amendments; (4) equitable exceptions apply to prevent Defendant from being denied citizenship for his failure to comply with the technical requirements if he was unaware of a claim to citizenship; (5) Defendant may claim citizenship due to the common law marriage of his parents under Texas law.

### A. The "Equitable Exception"

■ Defendant's reliance on a supposed "equitable exception" is not applicable to this case. [A]ny alien who seeks to acquire the "precious right" of American citizenship must meet all the requirements fixed by Congress. *Schneiderman v. United States,* 320 U.S. 118, 122, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943). There must be strict compliance with congressionally imposed prerequisites to citizenship. *Fedorenko v. United States,* 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1980). The cases cited by Defendant do not provide a basis for departing from the Congressionally imposed statutory requirements in this case. Thus, it does not appear that this argument presents any reason to allow Defendant to withdraw his guilty plea.

### B. Equal Protection

Defendant's equal protection argument is controlled by the decision reached in *Miller v. Albright,* 523 U.S. 420, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998). There, the Court held that it is not an equal protection violation to impose certain requirements on children claiming citizenship through their fathers while not imposing those same requirements on children claiming citizenship through their mothers. Defendant's equal protection argument, therefore, presents no grounds to allow a withdrawal of his guilty plea.

### C. The Immigration and Naturalization Act

The statutes that Defendant seeks to rely on are several, and they will be discussed together. First, 8 U.S.C. § 1101 provides that the term "child" includes children "born out of wedlock, by, through whom, or on whose behalf a ... benefit is sought by virtue of the relationship of the child to its natural mother or to its natural father if the father has or had a bona fide parent-child relationship with the person."

Also, 8 U.S.C. § 1401(g) provides that citizenship extends, inter alia, to "a person born outside the geographical limits of the United States ... of parents, one of whom is an alien, and the other a citizen of the United States, who prior to the birth of such person, was physically present in the United States ... for a period totaling not less than five years."

Further, 8 U.S.C. § 1409, entitled "Children Born out of Wedlock," imposes several additional requirements on children born out of wedlock who claim citizenship under § 1401(g). Those requirements are the following:

(1) a blood relationship between the father and the child shown by clear and convincing evidence;

(2) the father had the nationality of the United States at the time of the person's birth;

(3) the father had agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and

(4) while the person is under the age of 18 years,

(A) the person is legitimated under the laws of the person's residence or domicile,

(B) the father acknowledges paternity of the person in writing under oath, or

(C) the paternity of the person is established by adjudication of a competent court.

Defendant asserts that he may claim citizenship under § 1401(g), despite the additional provisions of § 1409 regarding children born out of wedlock, because under § 1401, the term "parent" does not include a father who has "disappeared or abandoned or deserted the child or if the father has in writing irrevocably released the child for emigration and adoption." Thus, Defendant argues that since his father never abandoned or deserted him, he qualifies as a child under § 1401(g) and need not meet the requirements of 8 U.S.C. § 1409. Defendant asserts that the additional provisions of § 1409 apply only if the child's father had abandoned it.

However, the textual basis for this claim is absent. Under 8 U.S.C. § 1409, it is made explicitly clear that children born out of wedlock must meet the requirements contained in § 1409, if the basis for their claim to citizenship is § 1401. Thus, the operative distinction explicitly set out in the statutory sections is that between children born within wedlock and those born out of wedlock, rather than the distinction between a child whose father had abandoned it and one whose father had not.

In addition, the requirements contained in § 1409 apply to those persons who have not reached the age of 18 on the effective date of the Act. The effective date was November 14, 1986, at which time Defendant would have been 14 years old. Thus, the requirements of § 1409 do apply to Defendant.

■ Thus, 8 U.S.C. § 1409 would apply to Defendant if he was born out of wedlock. But Defendant does not meet the requirements contained in § 1409, since his father had not taken steps to legitimate him and had not agreed in writing to provide financial support. It appears that, on the grounds addressed thus far, Defendant cannot qualify as a citizen under the provisions regarding children born out of wedlock.

### D. Common Law Marriage

In this context, Defendant makes the additional point that since Texas recognizes common law marriages and his parents' relationship may qualify as a marriage under that law, he was not born out of wedlock. If so, Defendant asserts, he need not meet the additional requirements imposed on children born out of wedlock contained in § 1409. Thus, the resolution of this issue turns on whether the alleged common law marriage of Defendant's parents constitutes a marriage under the relevant sections of the Immigration and Naturalization Act ("Act" or "INA").

The Government argues that Congress intended not to include common law marriages within the definition of marriages under the relevant sections of the Immigration and Naturalization Act ("INA" or "The Act"). The Government points out that under 8 U.S.C. § 1101(35) the term "spouse" is de-

fined to exclude those who are not in each other's presence during a marriage ceremony. But this statutory, language merely demonstrates that Congress wished to exclude from the definition of marriage those marriages that were conducted via telephone or some other technical medium. *See* H.R.Rep. No. 82–1365, Section 1, p. 35 (Feb. 14, 1952). It does not show a Congressional intent to exclude common law marriages under the Act.

Indeed, since one of the requirements of a common law marriage is that the parties actually lived together, it would seem that such a marriage provides one of the indicia of genuineness that Congress demanded of legitimate marriages when it excluded those "marriages" conducted via the romantic medium of the telephone. Thus, this statutory language and the legislative history seem to give little support to the Government's argument.

The Government also relies on *Adams v. Howerton*, 673 F.2d 1036, (9th Cir.1982), for its conclusion that common law marriages are not recognized under the INA. However, the *Adams* case focused on whether Congress intended to include homosexual marriages under the definition of marriages under the INA. Since there was no such intent, the Court held that the Act did not recognize homosexual marriages. The Court relied on the principle that the words in a statute are to be read in accord with their ordinary meaning, unless Congress demonstrates it intended a contrary meaning.

Though perhaps it is plausible to conclude that homosexual "marriages" were not recognized under the INA, the same is not true of common law marriages. As the government points out, the ordinary understanding of the term "marriage" is "the institution whereby men and women are joined in a special kind of social and legal dependence for the purpose of founding and maintaining a family." Webster Third New International Dictionary, p. 670 (1995). There is nothing in this definition that excludes common law marriages from its scope. In fact, the ordinary meaning seems plainly to include common law marriages.

■ Further, Congress has clearly indicated in other parts of the Act that the term "marriage" would be defined by state law, at least insofar as the marriage conformed to common understandings of the term. Where marriage is relevant to gaining admittance to the United States, for instance, the INA defines a "qualifying marriage" as one which "was entered into in accordance with the laws of the place where the marriage took place." 8 U.S.C. S 1186a(d)(1)(A)(i)(I). Several states recognize common law marriages. Thus, it can fairly be said that Congress intended to include those common law marriages defined by Texas law as marriages under the Act.

■■ Under the common definition and under Texas law, three requirements must be met to establish the existence of a marriage: (1) an agreement to be married; (2) after the agreement, living together as husband and wife; (3) representing to others that they were married. TexCode § 2.401; *See State v. Mireles*, 904 S.W.2d 885. If these three elements are proved, then the existence of the marriage, as a matter of fact, is proved. *Tompkins v. State*, 774 S.W.2d 195, 208–09 (Tex.Crim.App.1987). The Texas Supreme Court has held that circumstantial evidence may be used to prove these elements. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex.1993) A fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case. *Id.*

Here, Defendant has produced several different items of evidence. He has produced an affidavit from Defendant's sister indicating that Defendant's father lived with Defendant's mother in Texas for two years prior to Defendant's birth and several years after his birth. Defendant's father indicated that he lived with Defendant's mother "at common law." In addition, there is evidence that Defendant's mother asserted in a travel document that she and Defendant's father were married.

However, this evidence is in considerable conflict with other statements. For example, the Presentence Report indicates that Defendant stated that he lived in Durango, Mexico, and did not come to the United States until

1989. In addition, Defendant's father's stated that he was not married to Defendant's mother. Further, the travel document produced by Defendant's mother may, as the Government asserts, only indicate that she was able to travel across the border into the United States for a period not exceeding 72 hours. This would support the view that Defendant's mother and father did not live together in Texas. The evidence presented by Defendant is, at best, equivocal and contested.

The Government argues that even if this evidence were of greater weight and quality, this Court cannot recognize Defendant's citizenship because to do so would be the equivalent of declaring Defendant to be a citizen. The Government reminds the Court that the Attorney General, rather than the Courts, has been given the power by Congress to confer citizenship.

However, if the Court recognizes that Defendant may have a possible claim to citizenship because of the common law marriage of his parents, the Court would not be somehow making a citizen out of a person who was previously a non-citizen. Rather, the Court would simply be allowing the Defendant to present evidence of the marriage as a rebuttal to the Government's prima facie case.

Finally, the Government asserts that even if the Defendant had some evidence that his parents met the definition of common law marriage, he still could not meet the test under Texas law to establish the marriage. This is due to the fact that the Texas legislature added a statute of limitations to the statute dealing with common law marriages. This statute required that the parties who seek to prove a marriage must bring the action to prove the marriage within two years after the end of the relationship. The Government asserts that the statute provides for a one year statute of limitations. However, this was repealed in 1997. In its stead a rebuttable presumption was added, providing that "[i]f a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into

an agreement to be married." Tex.Code Ann. § 2.401. Thus, it is unclear on what basis the Government concludes that the statute of limitations applies in this action.

But even if the former statute of limitations was still on the books, the Court believes that the statute would not apply in this case. The Texas courts have themselves recognized that the rather harsh statute of limitations was meant to apply to those parties who seek offensively to establish the existence of a marriage as, for example, parties seeking to contest a will. But it was not intended to preclude a defendant from seeking to show a marriage existed when the defendant is seeking defensively to put on evidence of a marriage. See *State v. Mireles*, 904 S.W.2d 885 (Tex.App.1995) (statute of limitations did not apply when defendant was seeking to invoke privilege to prevent common law wife from testifying in murder trial).

Here, Defendant is seeking to show the existence of a marriage in order to rebut an element of the Government's prima facie case. He is not seeking offensively to establish a common law marriage, but to attack the Government's case. It is hard to imagine a more defensive situation than the one presented in this case. Therefore, the statute of limitations should not be applied to Defendant in this case.

Thus, the question that remains is whether the rather slim evidence of his parents' possible common law marriage presented by Defendant constitutes fair and just grounds for allowing Defendant to withdraw his guilty plea. It is important in this connection to note that "[a] defendant is not entitled to withdraw his plea merely because he has misapprehended the strength of the government's case or, upon reevaluation of the situation, can conceive of an arguable defense." *United States v. Silva*, 122 F.3d 412, 415 (7th Cir.1997) (citing *Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and *United States v. Nichols*, 986 F.2d 1199, 1203 (8th Cir.1993)).

 Also, the time and reasons for delay are often considered to be important factors in evaluating whether to allow a with-

drawal of a guilty plea. *See, e.g. United States v. Gibson,* 135 F.3d 1124, 1126 (6th Cir.1998) (six month unexplained delay from time of plea to time of motion to withdraw plea constituted reason for denying withdrawal); *United States v. Vest,* 125 F.3d 676, 679 (8th Cir.1997) (timing is one of the main factors in considering motion to withdraw guilty plea). Lack of prejudice to the Government does not require allowing a motion to withdraw a guilty plea. *United States v. Fountain,* 777 F.2d 351, 358 (7th Cir.1985). When a defendant seeks to withdraw a plea that was freely and knowingly given, he faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is fair and just. *See United States v. Abdul,* 75 F.3d 327, 329 (7th Cir.1996). One reason to allow withdrawal of a plea is that it was entered involuntarily. *United States v. Ellison,* 835 F.2d 687, 692 (7th Cir.1987) citing *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, (1970); *Boykin v. Alabama,* 395 U.S. 238, 246, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

 In this case, Defendant has not alleged that his guilty plea was entered involuntarily. Also, he failed to assert the possible existence of the common law marriage of his parents until almost six months after he had pled guilty to the offense of reentry by an illegal alien. In fact, he did not even assert this possibility until after the hearing on the motion to withdraw. Defendant does not assert that the evidence was hidden, hard to obtain, or that he was otherwise prevented or hindered from obtaining the evidence. He simply asserts that the late discovery of some evidence of the marriage should suffice to allow him to withdraw his guilty plea.

However, there is little, if any, reason to accept this claim. The evidence presented by defendant is contested and equivocal, and it was presented almost six months after Defendant's plea was entered. Considering all the circumstances, the Court concludes that Defendant has failed to meet his burden of showing a fair and just reason to withdraw his guilty plea.

## CONCLUSION

The only plausible grounds for allowing withdrawal of Defendant's guilty plea is the discovery of some, rather slim, evidence of his parents alleged common law marriage. Thus, the narrow issue is whether the assertion, almost six months after his plea, of some evidence of his parents common law marriage provides a sufficient reason for withdrawal of Defendant's guilty plea. For the reasons given above, the Court concludes that Defendant has not met his burden of showing a fair and just reason for withdrawal of his guilty plea.

*Ergo,* Defendant's Motion to Withdraw Guilty Plea (d/e 9) is hereby DENIED.