**UNITED STATES of America**

v.

**James Ronald KNOCKETT.**

**No. Crim. 01–274–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 26, 2001.

Kimberly Riley Pederson, United States Attorney's Office, Alexandria, VA, for plaintiffs.

William Hunter Old, Arlington, VA, for defendants.

## SENTENCING MEMORANDUM

ELLIS, District Judge.

On August 23, 2001, defendant James Ronald Knockett pled guilty to Count One of an eleven-count Indictment charging him with conspiracy to distribute fifty (50) grams or more of crack cocaine, in violation of 21 U.S.C. § 846.[1] He is now before the Court for sentencing.

### A. *Offense Conduct:*

The record reflects that from February 1 to July 13, 2001, defendant conspired with Gregory Peters, Andrea Epps and other individuals to distribute crack cocaine in the Eastern District of Virginia. During the course of the conspiracy, defendant regularly distributed quantities of crack cocaine to Peters for further distribution. Additionally, approximately twice a week from May to July 13, 2001, defendant obtained 2–ounce quantities of crack cocaine from Epps for further distribution in this district.

More specifically, on July 3, 2001, defendant distributed approximately 20 grams of crack cocaine to Peters, who then distributed the crack cocaine to an undercover police offer. In exchange for the crack cocaine, the undercover officer gave Peters $1,600 and a silver .38 caliber Smith & Wesson handgun, serial number 07939, which had been provided by the Loudoun County Sheriff's Office. Peters was promptly arrested following this transaction and the handgun was seized by the undercover officer. Following his arrest, Peters identified defendant as his supplier. Thereafter, on July 12, 2001, defendant distributed approximately 20 grams of crack cocaine to the undercover officer, in exchange for $1,200 and the same handgun used in the transaction with Peters a week earlier. Defendant, like Peters, was promptly arrested by law enforcement authorities following this transaction. At the time of his arrest, defendant was found to be in possession of 50 grams or more of crack cocaine and 50 grams or more of powder cocaine.

The total amount of crack cocaine properly attributable to defendant in this case is at least 500 grams but less than 1.5 kilograms.

### B. *Contested Matters:*

■ 1. Defendant objects to the Probation Officer's application of a two-level enhancement to his offense level for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1), which provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 lev-

---

1. The remaining counts against defendant, Counts 4 and 6–9, were dismissed on the government's motion.

els." U.S.S.G. § 2D1.1(b)(1). Application Note 3 to § 2D1.1 explains that the "enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons" and directs that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3; *see also United States v. Harris*, 128 F.3d 850, 851 (4th Cir.1997) (discussing Application Note 3); *United States v. Rusher*, 966 F.2d 868, 880 (4th Cir.1992) (same). And significantly, the Fourth Circuit recognizes that an enhancement under § 2D1.1(b)(1) does not require "proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun." *United States v. Johnson*, 943 F.2d 383, 386 (4th Cir.1991). Rather, "possession of the weapon during the commission of the offense is all that is needed to invoke the enhancement." *United States v. Apple*, 962 F.2d 335, 338 (4th Cir.1992).

■ In the course of the sentencing hearing, the government provided the factual predicate for the application of the § 2D1.1(b)(1) enhancement by presenting the testimony of two individuals, namely (i) Paul Laconti, a Vice Squad Investigator with the Loudoun County Sheriff's Office and (ii) John Dodson, a Loudoun County Task Force Agent. The government also presented a compact disc recording of the July 12, 2001 undercover drug transaction between defendant and Investigator Laconti. The evidence and testimony presented by the government establishes, by a preponderance of the evidence, that the § 2D1.1(b)(1) enhancement is proper.

Specifically, the evidence and testimony presented in the course of sentencing establishes that on July 3, 2001, defendant's co-conspirator, Greg Peters, advised Investigator Laconti, then acting in an undercover capacity, that he and "his man," referring to defendant, were looking for firearms. Then, following his arrest, Peters advised Agent Dodson that defendant was his source of cocaine. Peters further advised Dodson that he and defendant wanted firearms to protect themselves from two rival drug dealers. Thereafter, Peters, acting under the direction and supervision of law enforcement, told defendant that Laconti was seeking another source of cocaine and was willing to trade a firearm and cash for cocaine. Peters also advised defendant that he had discussed with Laconti the possibility of Laconti "taking care of" the two rival drug dealers. Following this discussion with Peters, defendant agreed to meet with Laconti.

On July 12, 2001, defendant met Laconti in the parking lot of a Hechinger's located in Loudoun County, Virginia for the purpose of selling Laconti an ounce of crack cocaine. During this transaction, which was monitored and recorded by law enforcement, Laconti stated to defendant that he heard defendant was "looking for a .38, right?," to which defendant responded "yeah." Laconti then stated "well, I have a .38; How about $1,200 and a .38 for the ounce." Laconti then told defendant "it's clean. I do this all the time. Is that cool?," to which defendant again replied "yeah." Defendant and Laconti engaged in further discussion about the actual quantity of crack cocaine provided by defendant, which was less than the full ounce anticipated by Laconti. Ultimately, the transaction was consummated by Laconti giving defendant a .38 caliber Smith & Wesson revolver and $1,200 in exchange for approximately 20 grams of crack cocaine. Significantly, at no time in the course of the transaction did defendant decline the offer of the firearm or express

any reservation about accepting the firearm in exchange for the crack cocaine. Indeed, while defendant could easily have refused the gun and demanded full cash payment from Laconti, he knowingly and voluntarily accepted it, along with the $1,200, in exchange for the crack cocaine. Additionally, in the course of the transaction, Laconti and defendant discussed the possibility of having Laconti "take care of" the two rival drug dealers.

The circumstances of this case fall squarely within the scope of § 2D1.1(b)(1), as defendant knowingly and voluntarily accepted the firearm from Laconti in the course of the undercover drug transaction. It is immaterial that the government was the source of the firearm, just as it is immaterial in other undercover transactions that the government may be the source of money to purchase drugs, or indeed, of drugs that are purchased. What matters is that the firearm, like the money involved, was used as a means to facilitate the drug transaction, and that defendant accepted the firearm without reservation. No more is required to find that, for purposes of § 2D1.1(b)(1), the weapon was present and connected with the offense. *See United States v. Gibson*, 135 F.3d 1124 (6th Cir.1998) (affirming a two level enhancement for possession of a gun that was sold by an undercover police officer to a defendant). Moreover, as defendant had previously discussed with Peters the possibility of exchanging firearms for drugs with Laconti, and the possibility of having Laconti "take care of" the two rival drug dealers, the presence of the weapon at the July 12 transaction was hardly unforeseeable to defendant.

Accordingly, for these reasons, and for the reasons stated from the Bench, defendant's objection regarding the two-level enhancement to his offense level pursuant to U.S.S.G. § 2D1.1(b)(1) is **OVERRULED.**

■ 2. Defendant also objects to the Probation Officer's failure to find him eligible for the safety valve provisions of U.S.S.G. § 5C1.2, based on his possession of a dangerous weapon in connection with the offense. For the reasons stated from the Bench, and for the reasons stated above in connection with defendant's first objection, this objection, too, is **OVERRULED.**[2]

### C. *Uncontested Matters:*

The parties have no other objections to the facts or Sentencing Guidelines calculations contained in the Presentence Investigation Report (PSIR). Accordingly, the Court adopts the findings and conclusions of the PSIR as its findings and conclusions in this sentencing proceeding.

### D. *Motion for Departure:*

Not applicable at this time, although counsel for the parties advised the Court that defendant's active cooperation is ongoing and may lead to a motion for reduction of sentence pursuant to Rule 35, Fed. R.Crim.P.

### E. *Conclusions:*

1. Defendant's adjusted offense level is 38.

2. Defendant's total offense level is 35.

3. Defendant's criminal history category is I.

---

**2.** Although it is undisputed that defendant meets four of the five requirements for application of the safety valve provision, it is equally clear that he does not meet the fifth, namely that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense ..." U.S.S.G. § 5C1.2(a)(2).

4. The range of punishment under the Guidelines is 168 to 210 months, with a term of supervised release of at least 5 years.

5. The fine range under the Guidelines is $20,000 to $4,000,000. An additional statutory special assessment of $100 applies pursuant to 18 U.S.C. § 3013(a).

6. Probation is not authorized.

### F. *Sentence Imposed:*

The Court commits defendant to the custody of the Bureau of Prisons for a period of one hundred and sixty eight (168) months. Defendant will receive credit for time already served in connection with the instant offense, pursuant to 18 U.S.C. § 3585(b), as computed by the Bureau of Prisons.

The Court recommends to the Bureau of Prisons that defendant be designated to serve his sentence at FCI Petersburg, Virginia, so that he may remain near his family.

Upon release from confinement, defendant is to serve five (5) years of supervised release.

As a special condition of supervised release, defendant must participate in, and successfully complete, a program of substance abuse rehabilitation and therapy, as directed by the Probation Officer.

The Court imposes a $100 special assessment pursuant to 18 U.S.C. § 3013(a), which amount is due and payable immediately.

In light of the defendant's limited assets, the Court declines to impose a punitive fine or an additional fine to cover the costs of incarceration or supervised release.

### G. *Statement of Reasons for the Court's Sentence:*

The sentence imposed adequately satisfies the Guidelines' goals relating to deterrence, retribution, and incapacitation.

The Court further **ORDERS** that this Sentencing Memorandum be appended to, and made a part of, the PSIR, pursuant to Rule 32(c)(3)(D), Fed.R.Crim.P.

Copies of this Sentencing Memorandum shall be issued to all counsel of record, the Probation Office, and the U.S. Marshal's Service.