NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0301n.06

No. 20-5621

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="10"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>CHARLES WARFIELD,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Jun 28, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: SUTTON, Chief Judge; SUHRHEINRICH and NALBANDIAN, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Charles Warfield was convicted of conspiring to distribute 50 grams or more of methamphetamine and for being a felonious possession of a firearm. On appeal, he challenges his felon in possession conviction. He also objects to the two-level firearm sentence enhancement. We affirm.

The underlying conspiracy at issue had a somewhat unusual twist: it "was largely based on collecting firearms, transporting the firearms to Louisville where they were more valuable, utilizing the firearms as currency in exchange for methamphetamine" and distributing the drugs in the Eastern District of Kentucky from January 2018 to September 2018. At trial Warfield's drug supplier, Lawrence Collinsworth, testified that on August 6, 2018, (during the conspiracy time frame) Warfield offered to trade a firearm for methamphetamine. On that date "Charles Warfield"

sent Collinsworth a Facebook message: "Got a 45 cal," "2clips," and "Ho[l]sters." Warfield indicated that the gun was "not a che[a]p one an[d] it[']s not hot." The message contained a photograph of a pistol stamped "LLAMA," two clips, and a holster. Warfield stated that Collinsworth would "want it [because] boy up north [would] give high for it," and that that the gun was "[a]t bucks if you want to see[]it." According to Collinsworth, the "boy up north" was the Louisville drug supplier.

Collinsworth further testified that he subsequently encountered Warfield at a local gas station. Warfield told Collinsworth that he still had "that gun" in his truck and offered to trade it "once again" for methamphetamine. Collinsworth "looked in [the truck] and glanced at" the gun. He recognized it as the same gun referenced in the Facebook message. Collinsworth did not "buy" the gun, because Warfield wanted too much meth for it. The firearm was never recovered.

Along with the conspiring to distribute methamphetamine, Warfield was charged with being a felon in possession under 18 U.S.C. § 922(g)(1) on or about August 6, 2018. "To obtain a conviction under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that: (1) the defendant was a felon; (2) the defendant knew he was a felon . . . ; (3) the defendant knowingly possessed a firearm; and (4) that the firearm had traveled through interstate commerce." *United States v. Ward*, 957 F.3d 691, 696 (6th Cir. 2020). Warfield stipulated that he knew that he was a convicted felon and that Llama 1911 .45 caliber firearms are manufactured outside of the Commonwealth of Kentucky, and the jury was so instructed, ("It is sufficient for this element to show that the firearm was manufactured in a state other than Kentucky. The government and the defendant have agreed that all Llama Model 1911.45 caliber firearms were manufactured outside of Kentucky.").

The jury convicted Warfield of both the conspiracy and firearm counts. The district court denied Warfield's motion for acquittal. The court also enhanced his sentence for possessing a firearm, which increased his total offense level from 28 to 30. With a corresponding Category V criminal history, the resulting guidelines range was 151 to 188 months rather than 140 to 175 months. Warfield was sentenced to 170 months of imprisonment.

Warfield contends that the evidence of firearm possession was insufficient because Collinsworth (1) merely glanced at and did not examine the gun when he saw it in Warfield's truck and therefore did not know if the gun was real, and (2) acknowledged that he could not say "for sure" that the firearm he saw was the same as the one in the photograph. Furthermore, an actual firearm never materialized.

As Warfield recognizes, we must affirm the conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Furthermore, "[s]ubstantial and competent circumstantial evidence by itself may support a verdict and need not remove every reasonable hypothesis except that of guilt." *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (quotation omitted).

Warfield has not surmounted this high evidentiary hurdle. Warfield's Facebook messages describing the gun and Collinsworth's testimony that he saw the firearm in Warfield's truck are substantial and circumstantial evidence that the gun existed, and that Warfield possessed it. Because Collinsworth was Warfield's drug supplier, and Collinsworth would front Warfield methamphetamine, it is unlikely that Warfield would pay his debts with a toy gun. That an individual named "buck" may have possessed the firearm at one point is not a game changer, because the jury received a constructive possession instruction. Warfield's challenge is really

about Collinsworth's credibility anyway, which is the jury's call, not ours. *See United States v. Jackson*, No. 20-6131, 2021 WL 2173422, at *6 (6th Cir. May 27, 2021). This argument is meritless.

Warfield also argues that there was insufficient evidence to show that the firearm he possessed had traveled in interstate commerce. This assertion cannot be squared with his stipulation that the Llama guns, like the one in the Facebook picture, are not manufactured in Kentucky. Moreover, a government witness testified that Llama firearms are "mainly manufactured n the Philippines and some manufactured in Spain." In other words, the agreed-upon evidence established this element beyond a reasonable doubt.

Warfield also complains that his sentence is procedurally unreasonable. Warfield received a two-level increase for possessing a dangerous weapon during the conspiracy. *See* USSG § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."). He claims that the enhancement is erroneously "predicated upon his conviction for . . . [a] phantom firearm."

A § 2D1.1(b)(1) enhancement is warranted if the government establishes by a preponderance of the evidence that the defendant actually or constructively possessed the weapon during the commission of the offense. *United States v. Ayoub*, 701 F. App'x 427, 447 (6th Cir. 2017). The "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* (quoting USSG § 2D1.1, cmt. n.11(A)). If the government succeeds in that task, the gun is presumed connected to the offense, and the burden shifts to the defendant to show that a connection was "clearly improbable." *Id. see also United States v. Pryor*, 842 F.3d 441, 452–53 (6th Cir. 2016).

Over Warfield's objection, the district court held that Warfield possessed the firearm during the methamphetamine conspiracy, that he was attempting to trade the firearm for methamphetamine, and that he "was aware of" the gun-running operation from the Eastern District of Kentucky to Louisville in exchange for methamphetamine. These factual findings are subject to clear error review. *See Pryor*, 842 F.3d at 452. There can be no clear error here. The jury concluded that Warfield possessed the gun on or about August 6, 2018, during the conspiracy. *See Ayoub*, 701 F. App'x at 447 (stating that constructive possession encompasses ownership, dominion, or control over the weapon). Thus, the government established that Warfield actually and constructively possessed the firearm during the conspiracy (though as a form of currency rather than protection), creating a rebuttable presumption that the weapon was connected to the offense. Warfield failed to rebut that presumption by proving that the (somewhat unusual) connection was clearly improbable. *See United States v. Cobb*, 432 F. App'x 578, 592 (6th Cir. 2011) (holding that USSG § 2D1.1(b)(1) may be applied where the weapon was the quid pro quo for the underlying drug transaction); *United States v. Gibson*, 135 F.3d 1124, 1128 (6th Cir. 1998) (reasoning that "connected" means "linked" in the USSG § 2D1.1(b)(1) context). The enhancement was not improper.

AFFIRMED.